Marvin L. **COOLEY**, Defendant-Appellant,

v.

**UNITED STATES** of America, Plaintiff-Appellee.

No. 73-3532.

United States Court of Appeals, Ninth Circuit.

Aug. 2, 1974.

**1250**

Thomas C. Kleinschmidt (argued) of Federal Public Defenders, Phoenix, Ariz., for defendant-appellant.

Thomas N. Crowe (argued) Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before CHAMBERS and BROWNING, Circuit Judges, and TAYLOR, District Judge.*

---

* Of The District of Idaho, sitting by designation.

1. That section provides in pertinent part:
"Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return . . ., keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or

## OPINION

FRED M. TAYLOR, District Judge:

The appellant, Marvin L. Cooley, was convicted of wilfully and knowingly failing to file a federal income tax return for each of the years 1968, 1969 and 1970 in violation of Title 26 U.S.C., § 7203.[1] Appellant was sentenced to a term of imprisonment of one year and fined in the amount of $2,000.00 on each count.

The appellant voluntarily chose to represent himself at all times in the trial court, but on this appeal he is represented by counsel appointed at his request subsequent to the conclusion of the proceedings in the lower court. The issues, which have been raised and presented here, will be considered seriatim.

■ One of the contentions now made by appellant is that the trial court erred in allowing him to represent himself without first determining whether the waiver of counsel was competently and intelligently made. We find this contention has no merit.

The record reveals that appellant was and is a mature, intelligent and well-informed individual; that he was especially well informed in regard to income tax matters, the charges against him and the possible consequences if convicted in regard thereto. Also, it appears that appellant was knowledgeable, experienced and competent in regard to the legal proceedings in connection with the charges against him. It clearly appears from the record that appellant not only refused the court's offer to appoint counsel for him, but that he knew of his right to represent himself and insisted on doing so.[2] The court could not prop-

times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor. . . ."

2. The record shows:
The appellant first appeared before the district court, Judge Craig presiding, on July 17, 1972 at which time he asserted that he intended to represent himself. The court advised appellant that in the event he did not have sufficient funds with which to hire an attorney, he would appoint one for him.

erly deny him that right. Title 28 U.S. C. § 1654; Hodge v. United States, 414 F.2d 1040, 1042 (9th Cir. 1969).

Appellant then stated that he had not decided just what he would do in that area, but at the moment he wished to represent himself. Prior to his appearance on this date, he had filed a motion to disqualify Judge Craig on the basis of bias and prejudice, which motion was assigned to Judge Muecke for hearing, and further proceedings on the motion were continued for 30 days. At this time, appellant requested 30 days within which to file a motion to dismiss the information which was granted by the court and no plea was required at that time. The matter was continued until September 18.

On September 25, 1972, appellant again appeared in court before Judge Craig, at which time he was given a copy of the three count information and advised of the consequences in the event he was convicted on the charges. Appellant stated that he understood what he was charged with and stated to the court that before he entered his plea, he would like to have the matter presented to a grand jury because of the possible penalties involved. The court advised appellant that the charge in each count was a misdemeanor, but appellant argued that because of the three counts, he was facing three years in prison and a possible $30,000 fine in addition to the cost of prosecution. At that time, the court asked the Assistant U. S. Attorney to refer the matter to the grand jury and the matter was continued to November 20.

On November 20, 1972, appellant again appeared before Judge Craig for arraignment and for hearing on his motion for inspection of grand jury minutes and discovery. After considerable discussion in regard to discovery, appellant was assured the government would show him what evidence it had and the names of the witnesses it intended to have at trial. Having been furnished with a copy of the indictment, appellant stated to the court that he planned to file a motion to dismiss after he viewed the District Attorney's file. The court assured him that he would be granted time to do so, but requested that he enter his plea at that time. Appellant stated that he preferred to stand mute and after some colloquy between the court and appellant, the court entered a plea of not guilty for him.

Appellant's motion to disqualify Judge Craig came on for hearing before Judge Muecke on September 5, 1972. The motion was based upon the alleged criticism and dissatisfaction expressed by Judge Craig in regard to allowing other defendants to represent themselves in similar tax cases. Appellant sought to establish that Judge Craig assigned a public defender to Victor George

We are then confronted with the question of whether the appellant competently and intelligently asserted the right to Peterson in another case without listening to Peterson trying to assert that he wanted to defend himself. He stated that he personally witnessed the proceedings in connection with Peterson and that if he (Cooley) wanted to defend himself in Judge Craig's court, he did not want to be harassed and intimidated and virtually called a fool because he elected to do so.

Again, at the continued hearing on appellant's motion to disqualify Judge Craig held on September 27, he expressed his intention to represent himself and stated that he should have extended to him the same courtesies extended to other or regular attorneys in these matters. The court again advised appellant that he was in an area where he needed professional competence. The court further observed that appellant and other persons similarly situated misunderstood, in his opinion, the legal issues involved. The motion to disqualify Judge Craig was denied.

Prior to trial, appellant sought to suppress as evidence certain statements previously made to law enforcement agents. The court indicated its displeasure with the untimeliness of the motion by stating: "See, you chose to represent yourself and you are entitled to have a lawyer". The defendant acknowledged his understanding of that fact as well as his right to make the motion. The Honorable W. D. Murray, Senior United States District Judge, presided at and during the trial.

On the hearing of appellant's motion for a new trial and proceedings on sentencing, the appellant restated his understanding of and his insistence to proceed pro se by stating: "Your Honor, as to proceeding pro se, I guess there is no doubt that I have the right to do that and I submit that I would probably be in jail before now if I had gone any other way".

It should also be noted, from the record in this case, that the defendant filed almost every conceivable motion permitted under the F.R.Cr.P. in the trial court and that he intelligently and competently presented the same to the court.

Although appellant was advised of and knew of his right to counsel, he never, at any time, expressed any desire for assistance of counsel. The record clearly indicates that he knowingly and intelligently waived his right to counsel and emphatically asserted his right to represent himself.

Also, the record indicates that the district court was quite familiar with appellant's background and experience in regard to similar proceedings pending against other individuals in the same court.

represent himself.[3] In *Hodge*, a majority of this court, in banc, stated at p. 1042:

"In this context we take this to mean whether he was sufficiently informed of the consequences of his choice."

Also in *Hodge* at p. 1043, the court asserted:

"The question was simply whether the defendant understood the charges against him and was fully aware of the fact that he would be on his own in a complex area where experienced and professional training are greatly to be desired."

In our opinion, that question in this case must be answered in the affirmative. In reaching this conclusion, we have examined and relied upon the record as a whole, as we may properly do. *Hodge*, supra, at 1043 n. 4.

The appellant relies principally on United States v. Dujanovic, 486 F.2d 182 (9th Cir. 1973) as his authority for the proposition that his waiver of counsel is not adequately reflected in the record. We do not believe that *Dujanovic* is dispositive of this case since the factual situation in that case was inapposite to the one here. Appellant contends that under *Dujanovic*, it is not sufficient that waiver appear from the record as a whole. Appellant relies upon two statements in the *Dujanovic* opinion: (1) that it is a "minimal requirement" that the district court "shall not grant a request to waive counsel and proceed *pro se* without addressing the accused personally and determining on the record that the demand to waive counsel and proceed *pro se* is competently and intelligently made with understanding of the nature of the charge and the penalties involved"; and (2) that "[n]othing whatsoever can thereafter occur during the pilotless journey which will evidence

the state of mind of the accused or information at hand upon which he at that time intelligently waived his constitutional right of counsel." 486 F.2d at 186.

■ The first statement is obviously admonitory rather than a rule of decision. See 486 F.2d at 188 n. 2. While the procedure described may be preferred, its omission is not, per se, reversible error, where it appears from the whole record that the defendant knew his rights and insisted upon representing himself. We understand the second statement to mean only that the manner in which the defendant conducts his defense cannot conclusively establish his state of mind at the time of waiver.

It should be noted that even in *Dujanovic*, the panel examined three distinct portions of the record for the purpose of determining whether there had been a waiver of counsel. Also, the panel recognized the rule as announced in *Hodge*, supra, 414 F.2d at 1042 n. 2, that the determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.

■ The appellant contends that the instructions on the issue of wilfulness were inadequate and incorrect for the reason that the court did not include the words "bad intent" or "evil motive" as requested. He argues that United States v. Bishop, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973) required the trial court to include the requested language. We do not agree. The court clearly instructed the jury in regard to the applicable law and the meaning of "wilful" even though the language used did not include "bad intent" or "evil mo-

---

3. As set out in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938):

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of

whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

tive."[4]  The instructions given by the court were in substantial compliance with *Bishop* and appellant's requested instruction would not have added anything.  Numerous courts have rejected claims that wilfulness instructions must include the terms "bad intent" or "evil motive", the most recent pronouncement being by a panel of this court in United States v. Hawk, 497 F.2d 365 (1974). In *Hawk*, the court stated:

> "While the use of such terms is often helpful, all that is required are instructions which communicate the proper notion of specific intent in understandable terms."

The instructions given in this case were indeed adequate for this purpose.

▇  Appellant next argues that the trial court committed reversible error in refusing to admit in evidence a copy of a letter appearing in the Congressional Record, an Internal Revenue Service Training Manual, and several opinions of the United States Supreme Court in support of appellant's position at trial that he did not act "wilfully".  The thrust of his argument is that he relied on these matters in determining that he was not required to file 1040 income tax returns as required by the statute.  After considerable discussion with the court, at the bench and during the absence of the jury, the court at recess reviewed the material offered and concluded that they did not contain any relevant information on the issue of whether the appellant should or should not file completed tax returns.  We agree that the offered material was immaterial and should not have been admitted as evidence.  In the orderly trial of a case, the law is given to the jury by the court and not introduced as evidence.  It is the function of the jury to determine the facts from the evidence and apply the law as given by the court to the facts as

4. The trial court's instructions on wilfulness:

"As stated before, with respect to offenses such as charged in this case, specific intent must be proved before there can be a conviction.  You will note that the failure to act charged in the indictment must be proved beyond a reasonable doubt to have been done willfully.  An act or failure to act is done willfully if done or failed to be done voluntarily and purposely and with the specific intent to do that which the law forbids."

"The specific intent of willfulness is an essential element of the crime of failure to file an income tax return.  The word 'willfully' used in connection with this offense means deliberately and intentionally, and without justifiable excuse or with the wrongful purpose of deliberately intending not to file a return which the defendant knew he should have filed, in order to prevent the Government from knowing the extent of his tax liability or facts material to the determination of his tax liability.

Defendant's conduct is not willful if he acted through negligence, inadvertence, or mistake, or due to good faith, misunderstanding of the requirements of the law."

"If you find from all of the evidence that the defendant Marvin L. Cooley was honestly mistaken in his belief, you must find him not guilty as to the charges made in the indictment."

"If a person in good faith believes that he has done all that the law requires, he cannot be guilty of the criminal intent to willfully fail to file a tax return.  But if a person acts without reasonable ground for belief that his conduct is lawful, it is for the jury to decide whether he acted in good faith or whether he willfully intended to fail to file a tax return.

This issue of intent as to whether the defendant willfully failed to make an income tax return is one which the jury must determine from a consideration of all the evidence in the case bearing on the defendant's state of mind.

The defendant has introduced evidence showing that he relied on the advice of a Treasury employee, if you believe this evidence, or if this evidence raises a reasonable doubt in your mind as to the guilt of the defendant, then you will acquit the defendant and say by your verdict Not Guilty."

"In connection with the charges made, you are instructed that the statutory requirement to file an income tax return does not violate a taxpayer's right against self-incrimination.  But if you find that the defendant in good faith believed that it did violate his right against self-incrimination then you may consider that in connection with the charge of failure to file, and if as a result you find that he did not act knowingly and intentionally and willfully, then you must find a verdict of Not Guilty for the defendant."

found by them from the evidence. Obviously, it would be most confusing to a jury to have legal material introduced as evidence and then argued as to what the law is or ought to be.

Haigler v. United States, 172 F.2d 986 (10th Cir. 1949), relied on by appellant, is not authority on the question of whether copies of court decisions are admissible as evidence. It is also distinguishable in that the defendant there was prevented from testifying in regard to his understanding of the law and the jury was instructed that his ignorance of the law was no excuse. The record here shows that appellant was permitted to testify in regard to his conversations with employees of the Internal Revenue Service and in regard to his understanding of his rights under the law and Constitution. In addition, the trial court carefully instructed the jury in regard to appellant's good faith reliance upon his own interpretation of the law.

■ Finally, appellant claims that the sentence imposed was so excessive as to be cruel and unusual, even though within the statutory limits.

"It is well settled that a sentence within a valid statute cannot amount to 'cruel and unusual punishment', and that when a statute provides for such punishment, the statute only can be attacked. It is equally clear that the appellate court has no power to modify or reduce the sentence. ' "If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by statute." Gurera v. United States, 8 Cir., 1930, 40 F.2d 338, 340.' Pependrea v. United States, 275 F.2d 325, 329, 330 (9th Cir. 1960); see also: Bowman v. United States, 350 F.2d 913, 917 (9th Cir. 1965)."

We are confident that the experienced sentencing judge gave due consideration to all the facts and circumstances involved in this case before imposing the sentence on appellant. We do not find the sentence so excessive as to be cruel and unusual.

After carefully reviewing the record in this case, we are of the opinion that appellant was accorded a fair and impartial trial and that he represented himself as intelligently and competently as he might have been by an experienced attorney.

Having found no reversible error in the record, the judgment is affirmed.