UNITED STATES of America, Appellee,

v.

Francis E. GILLINGS and Ruth Gillings, Appellants.

No. 77–2717.

United States Court of Appeals, Ninth Circuit.

Feb. 7, 1978.

709–10. We think reliance on those cases was mistaken.

8. *See* n.1, *supra*.

E. Richard Walker, Asst. Federal Public Defender (argued), Sacramento, Cal., for appellants.

Harry E. Hull, Jr., Asst. U. S. Atty., Sacramento, Cal., for appellee.

Before BROWNING, CHOY, and GOODWIN, Circuit Judges.

PER CURIAM:

The Gillingses are tax protesters. They did not file returns for 1971 or 1972, and the government prosecuted them for these failures under 26 U.S.C. § 7203. Francis was convicted for both years and Ruth for 1971; the court directed her acquittal for 1972. We affirm Francis' convictions and reverse Ruth's.

The Gillingses originally were furnished appointed counsel, but their appointed attorneys refused to file various groundless motions setting forth the Gillingses' personal opinions about the tax system. As a result, they discharged their appointed counsel, and after lengthy colloquy with the court on the matter of counsel, proceeded pro se. They now assert that their waiver of the right to counsel was ineffective.

A waiver of the right to counsel must be knowing and intelligent. While no particular form of interrogation is necessary, the court must assure itself that the defendant understands the charges and the manner in which an attorney can be of

assistance. The defendant must be aware that he or she will be on his or her own in a complex area where experience and professional training are greatly to be desired. *Hodge v. United States*, 414 F.2d 1040 (9th Cir. 1969); *Mason v. Pitchess*, 440 F.2d 454 (9th Cir. 1971); *United States v. Mitchell*, 472 F.2d 1223 (9th Cir. 1972), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2162, 36 L.Ed.2d 695 (1973); *United States v. Dujanovic*, 486 F.2d 182 (9th Cir. 1973); *Cooley v. United States*, 501 F.2d 1249 (9th Cir. 1974), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975). We have said that it is better to have the record show that the crucial considerations were recognized, but we have not found deficiencies in the record *per se* to require reversal. *Compare Cooley* with *Dujanovic*. The Supreme Court has recently placed emphasis on the need for a record which will establish that the defendant knows what he or she is doing and that the choice is made with eyes open. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). We apply the *Faretta* standard here.

■ The trial judge approved the Gillings waivers after having had several opportunities to observe the Gillingses in court, after an extended discussion in which Francis played a major role, and after having them consult their attorneys one last time. The record as a whole reflects that Francis made a knowing and intelligent decision under *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ The record with regard to Ruth is less clear. Her only participation in the colloquy was to give pro forma answers to pro forma questions at the very ending of the hearing. The record in no wise shows that her decision was knowing and intelligent. One might infer from the record as a whole that Ruth agreed with and accepted her husband's decision. (There is a hint throughout the record that she "obeys" her husband in all things.) But that is not the same quality of waiver as is found in a record which is directed to her own decision as an individual. None of our previous decisions approves one person's waiver on another's say so, nor upon a "me-too" record. The Supreme Court's statement in *Faretta* does not encourage our adopting such a course now. Her conviction must be reversed.

The Gillingses argue that their selection for prosecution was based on their exercise of rights which the First Amendment protects and therefore was impermissibly discriminatory. In support of this challenge they cite evidence indicating that the Internal Revenue Service had a policy of taking the offensive against tax protesters. We have held that prosecutions directed primarily against vocal opponents of a governmental program involved are impermissible. *United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972).

■ The test which we and other courts now use in this area is that of *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974). Under it the defendant must show: (1) that others are generally not prosecuted for the same conduct; and (2) that the decision to prosecute this defendant was based on such impermissible grounds as race, religion, or the exercise of constitutional rights. *See United States v. Oaks*, 527 F.2d 937 (9th Cir. 1975), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); *United States v. Kelly*, 556 F.2d 257, 264 (5th Cir. 1977). Here the government showed that during the relevant period the San Francisco region of the I.R.S. investigated many failure-to-file cases, some tax protest and some not, and recommended a significant number for prosecution. Most of those prosecuted were not tax protesters. In addition, the Gillingses failed to show that the decision to prosecute them was part of the I.R.S. program of taking the offensive against tax protesters. The selection of the Gillingses did include consideration of the deterrent effect of convicting a leader of the tax protest movement. These facts bring the decision to prosecute within *United States v. Oaks*, and the Gillingses' discriminatory prosecution claim therefore fails.

An I.R.S. agent testified at the trial that he had heard Francis boast at a public meeting that he had not paid taxes for 1972 despite an income of $40,000. On cross-examination he stated that he had refreshed his recollection by listening to a tape of the meeting. The government had not provided this tape to the defense despite a timely request under Fed.R.Crim.P. 16(a)(1)(A); the prosecutor had in fact learned of its existence only the previous day. This information did not come out until after the government had laid a foundation for playing the tape and was preparing to do so. Upon learning of the situation the trial court forbade use or further mention of the tape and told the jury to ignore it.

The government's actions here were inexcusable. The Gillingses argue that the misconduct demands a mistrial. However, the sanctions to be imposed for violating pretrial discovery rules are largely within the trial court's discretion. *United States v. Baxter*, 492 F.2d 150, 174 (9th Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). Under the circumstances a mistrial might well have been appropriate, but one was not required. The court imposed a severe sanction, keeping out evidence which would, apparently, have severely damaged Francis' case. It is not clear that the inferences the jury might draw from the court's actions would be prejudicial to Francis rather than to the government. The agent testified to Francis' statements on the basis of his memory without relying on the tape. We find no reason for reversal here.

The government, to show that the Gillingses had income that required filing a return, used the gross-receipts-less-gross-expenses method. This method was appropriate. *United States v. Brewer*, 486 F.2d 507 (10th Cir. 1973), *cert. denied*, 415 U.S. 913, 94 S.Ct. 1407, 39 L.Ed.2d 467 (1974), on which the taxpayers rely, involved a sale of corporate stock rather than of goods sold as part of an ongoing business. The government may not have found all sources of the Gillingses' expenses, but the taxpayers had the opportunity to present more, and they took advantage of it. There was still sufficient evidence for the jury to find that their income for 1971 exceeded the minimum required for filing a return. If the jury believed that Francis had said that he had an income of $40,000 in 1972 but had paid no taxes, it had sufficient evidence to convict him on the count for that year also.

Affirmed as to Francis Gillings.

Reversed and remanded as to Ruth Gillings.