**UNITED STATES of America, Appellee,**

v.

**Jack APONTE, Appellant.**

**No. 77–2735.**

United States Court of Appeals,
Ninth Circuit.

Sept. 7, 1978.

John W. Lovell (argued), Tucson, Ariz., for appellant.

John G. Hawkins, Asst. U. S. Atty. (argued), Phoenix, Ariz., for appellee.

Before ELY and GOODWIN, Circuit Judges, and ENRIGHT *, District Judge.

GOODWIN, Circuit Judge:

Jack Aponte was convicted by a jury of violating 18 U.S.C. § 3150 (jumping bail). On appeal, he asserts a variety of irregularities, but the only two issues that require discussion are whether the trial judge erred in finding Aponte competent to stand trial and whether the judge improperly allowed Aponte to represent himself without an effective waiver of his right to counsel.

Some three years after Aponte had failed to appear for sentencing in the District of Arizona upon a conviction arising out of his possession of a controlled substance, he was arrested in California and returned to Arizona for further proceedings. In due course, he was indicted for the bail violation. The court appointed counsel from the federal defender's office. Counsel promptly filed, pursuant to Fed.R.Crim.P. 12.2, notice of intent to defend on the ground of insanity or mental defect.

Counsel next filed a notice asserting that Aponte was not mentally competent to stand trial. At a hearing called to determine Aponte's competence to stand trial, Aponte brushed aside his appointed counsel and embarked upon a colloquy with the court.

Aponte asserted first that the federal defender was hostile to him. Aponte next shared with the court his views about a number of other attorneys, psychiatrists, public officials, local celebrities and federal agencies, all of whom he accused of conspiring against him. He concluded by announcing that he was competent to stand trial and to defend himself.

The court questioned whether Aponte was mentally competent to stand trial, and ordered him transferred to the United States Medical Center for Federal Prisoners in Springfield, Missouri, for further study. Aponte remained in Springfield for approximately 90 days. He was seen briefly by several psychiatrists. After a final staff conference, Aponte was returned to Arizona with a report that in the opinion of the Springfield doctors he was competent to stand trial at that time.

The federal defender was then faced with the somewhat limited range of defenses available in a bail-jumping case, and a client whose mental condition continued to raise serious questions. Counsel again decided to recommend a defense based upon mental illness or defect. Aponte then became adamant in his rejection both of the attorney and of the proposed defense. (Aponte explained in court later that he was planning to bring civil actions for damages against the President, the CIA, and other federal agencies, and he felt that if he defended the charged bail violations on the ground of diminished responsibility that defense might prove counter-productive in his contemplated damage action.)

On the morning that the case was called for trial, Aponte announced that he would try his own case, in his own way, without the aid of counsel. He said that he had made up his mind, and that he had "fired" his attorney.

The district judge again listened briefly to Aponte's views about counsel, about representing himself, and about the existence of a governmental conspiracy. The judge stated that he would allow Aponte to represent himself, but admonished him that he would be bound by the same rules as any lawyer and that he would have to behave properly. The court then instructed the federal defender to remain at Aponte's side as an advisor.

The trial proceeded. Aponte conducted his own defense, such as it was, although he allowed the federal defender to cross-examine witnesses on his behalf. Aponte took the stand, and told the jury about the same conspiracy he had earlier described to the court.

---

* The Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

When both the government and the defense had presented their cases, the judge called a recess in order to discuss jury instructions with counsel and Aponte. After the jury had left the courtroom, the federal defender made a motion for a mistrial on the ground that Aponte was not competent to stand trial. The trial judge then conducted an extended hearing on the issues of Aponte's competence to stand trial, and his competence to waive counsel and represent himself.

The evidence at the hearing consisted of direct and cross examination of three psychiatrists, and their written reports. All three psychiatrists bolstered their pretrial conclusions by references to the defendant's conduct during the trial.

The government's psychiatrists generally viewed Aponte as a paranoid personality, "sociopathic", but not psychotic. These doctors were somewhat guarded in their use of legal definitions, but they said Aponte was competent. The government doctors did not specifically discuss Aponte's competence to waive his right to counsel.

Aponte's court-appointed psychiatrist was of the opinion that Aponte was acutely psychotic and incompetent. He made no distinction between competence to stand trial and competence to make an intelligent waiver of right to counsel.

At the end of the hearing the trial judge found that Aponte was competent to stand trial. The judge stated that he had believed Aponte to be competent both to stand trial and to waive his right to counsel before the trial started and that he had allowed the hearing "out of an overabundance of caution". After denying the motion for a mistrial, the judge instructed the jury. The jury returned a guilty verdict.

■ The district court's determination of Aponte's competence to stand trial is a finding of fact which may be set aside only if it is clearly erroneous. We cannot say that the judge's competence determination was clearly erroneous in this case.

■ However, Aponte's conviction must be reversed because the record does not disclose that he knowingly and intelligently waived his right to counsel before electing to represent himself.

In *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) the Supreme Court said:

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits. *Johnson v. Zerbst*, 304 U.S. [458], at 464–465, 58 S.Ct. at 1023, [82 L.Ed. 1461]. Cf. *Von Moltke v. Gillies*, 332 U.S. 708, 723–724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel. McCann*, 317 U.S., at 279, 63 S.Ct. at 242, [87 L.Ed. 268]."

In *United States v. Dujanovic*, 486 F.2d 182 (9th Cir. 1973), this court suggested that a district court should not grant a defendant's request to proceed *pro se* "without addressing the accused personally and determining on the record that the demand to waive counsel and proceed *pro se* is competently and intelligently made with understanding of the nature of the charge and the penalties involved." 486 F.2d at 186.

In the later case of *Cooley v. United States*, 501 F.2d 1249, 1252 (9th Cir. 1974), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975), we held that although the procedure outlined in *Dujanovic* was preferred, its omission is not *per se* reversible error where the record reveals a knowing and intelligent waiver; however, *Cooley* presented a fact situation where the trial judge was more familiar than the judge in this case with the defendant's background and experience. In *Cooley*, the defendant

was well versed in the legal procedures and issues involved in his case. Moreover, the trial judge in *Cooley* advised the defendant on more than one occasion before trial that he would be better off with professional assistance. There was ample evidence that the defendant had been informed of the charges against him, the penalties involved, and the dangers of self-representation. 501 F.2d at 1250–51 n.2.

In the recent case of *United States v. Gillings*, 568 F.2d 1307 (9th Cir. 1978), this court once again discussed the responsibilities of the trial court in determining whether a defendant has effectively waived his right to counsel before he is allowed to represent himself. In that case we held:

" * * * While no particular form of interrogation is necessary, the court must assure itself that the defendant understands the charges and the manner in which an attorney can be of assistance. The defendant must be aware that he or she will be on his or her own in a complex area where experience and professional training are greatly to be desired. * * " 568 F.2d at 1308–09.

*Faretta* teaches that a court cannot force counsel upon a competent defendant who elects, after being fully informed, to represent himself. *Dujanovic* teaches that the election must be tested before trial and that the record must show the basis for the court's finding that the right to counsel has been competently and intelligently waived.

Although a trial judge's failure to make a specific waiver inquiry is not *per se* reversible error, the only practical means available to protect against either a *Faretta* reversal or a *Dujanovic* reversal is to make a record before allowing the case to proceed. It will be only the rare case, such as *Cooley*, in which an adequate waiver will be found on the record in the absence of a specific inquiry by the trial judge.

■ The experienced trial judge in this case undoubtedly believed Aponte to be competent to elect to try his own case, but did not place on the record a finding that Aponte had competently and intelligently waived his right to counsel before he was allowed to act as his own lawyer. The failure to make a pretrial record on the specific issue of "intelligent" waiver was exacerbated by the abundance of doubt about Aponte's mental condition. A specific finding at the beginning of the trial on the issue of Aponte's competence to stand trial should have been accompanied by a similar finding on his competence to proceed without counsel.

■ The question of competence to waive counsel must be decided before trial. Otherwise, as this case illustrates, there is a danger that the trial judge may impermissibly consider the defendant's courtroom performance in deciding whether the defendant was competent to waive his right to counsel and whether he did in fact waive that right.

Even though the trial judge's after-the-fact findings on the competence issue were stated in a form intended to relate back to the critical time when the trial commenced, it is difficult to overlook the substantial probability that the testimony of the psychiatrists concerning Aponte's performance at trial had some influence on the court's ruling.

■ The manner in which a defendant conducts his defense cannot establish his state of mind at the time he opted for self-representation. *Cooley v. United States*, 501 F.2d at 1252. Since the trial judge may not allow a defendant to represent himself without first determining that there has been a waiver of the right to counsel, the decision on the defendant's competence to waive cannot be deferred.

Reversed and remanded.

ENRIGHT, District Judge, dissenting:

I respectfully dissent.

This case presents the classic trial court dilemma involving *pro se* representation. The trial judge was faced with the difficult decision of accepting the defendant's waiver and being reversed under *Dujanovic* or rejecting the waiver and being reversed under *Faretta*. In this case, the trial court

accepted the firm, unequivocal demand of the defendant after patiently hearing him out, both in prior pretrial proceedings held months earlier and before and throughout the trial itself. He continued the appointment of trial counsel, who appeared at every proceeding, actively participated in the examination of witnesses, initiated critical motions and rigorously advanced the defendant's position at an extended competency hearing during the course of the trial itself. The defendant had whatever advantages accruing to his interest under *Faretta* together with all the advantages appointed counsel could bring to his case. A complete review of the record indicates he had a full and fair trial; that he was treated with patience and courtesy by the trial judge throughout the proceedings and that, in effect, he had the best of both worlds. In my opinion, to reverse his conviction in these circumstances would be an exaltation of form over substance and a dilution of the holdings of *Hodge* and *Cooley*.

*Hodge v. United States,* 414 F.2d 1040, 1043 (9th Cir. 1974) (en banc), holds that we must look to the whole record in determining whether a defendant's waiver of his right to counsel was knowingly and intelligently made.

*Cooley v. United States,* 501 F.2d 1249 (9th Cir. 1974) and *United States v. Gillings,* 568 F.2d 1307 (9th Cir. 1978) agree that no particular interrogation, exchange or litany need be utilized in assuring that the defendant has in fact made an intelligent waiver. Although as a matter of good practice a trial judge "shall not grant a request to waive counsel and proceed *pro se* without addressing the accused personally and determining on the record that the demand to waive counsel and proceed *pro se* is competently and intelligently made with understanding of the nature of the charge and the penalties involved", *United States v. Dujanovic,* 486 F.2d 182, 186 (9th Cir. 1974), a failure to conduct an interrogation of this nature is not, *per se,* reversible error. *Coo-*

ley v. United States, supra, 501 F.2d at 1252.

An evaluation of the whole record and the reasonable inferences which may be drawn therefrom shows that Aponte's waiver of his right to counsel was knowingly and intelligently made. Aponte was no stranger to the legal process when he entered his waiver in open court. He had had an opportunity during the January 1977 competency hearing to witness a legal proceeding first-hand and to appreciate its intricacy and formality. He had had an opportunity to observe the role of counsel in an adversary proceeding. There is every reason to suppose that at the time Aponte indicated his intention to waive his right to counsel he was fully cognizant of the hazards of proceeding *pro se.* With respect to *Hodge's* requirement that an accused understand the charges against him in order to competently waive his right to counsel, the Clerk's Record shows that at the waiver of removal hearing on November 10, 1976, Magistrate Richard S. Goldsmith of the United States District Court for the Northern District of California informed Aponte that he was charged with the offense of bail-jumping and failure to appear in Arizona.[1] Under these circumstances, the requirements articulated in *Hodge* and *Cooley* for competent waiver of the right to assistance of counsel were met.

Even if the waiver was incompetent under the foregoing standards, the error was in any event harmless under the rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Once the narrow and technical rules regarding competency of waiver are put to one side and the adequacy of Aponte's representation is assessed, it is manifest that the combined efforts of Aponte and Velasco (defendant's "sideline counsel") secured full and fair representation to the accused. Velasco, whom Aponte fired and who remained at counsel table during trial to furnish assistance from time to time, actively aided in the presenta-

---

1. It might be additionally noted that bail-jumping is a relatively straightforward offense easily comprehensible by lay persons.

tion of Aponte's defense. At the commencement of trial, Velasco assisted Aponte in exercising peremptory juror challenges. On two occasions, after Aponte was offered and declined an opportunity to cross-examine a prosecution witness, Velasco conducted cross-examination in Aponte's behalf. The record shows that Velasco prompted Aponte to move to dismiss the indictment at the close of the government's case. When Aponte took the stand and gave narrative testimony, the court afforded him the opportunity to confer with Velasco relative to government objections to his testimony. At the close of the defense case, Velasco advised the court that Aponte should move for a directed verdict of acquittal. The court inquired of him whether he wished to move for a directed verdict of acquittal. Aponte responded in the affirmative and the court directed that the record show the motion. Velasco and Aponte agreed that Velasco would object to any irrelevant arguments advanced by the prosecutor during the course of his summation. The court further offered to permit both Aponte and Velasco to argue to the jury. At the conclusion of trial, Velasco tendered forms of verdict for consideration by the court for submission to the jury.

Perhaps most significant of all is the fact that Velasco exercised his independent professional judgment on behalf of Aponte. After Aponte had "moved" for a directed verdict, as related above, Velasco moved for a mistrial on the grounds of insanity despite Aponte's evident reluctance to embark on this course. The court then proceeded to hold a competency hearing during which Aponte completely deferred to Velasco with respect to the calling, examination and cross-examination of witnesses. It would surely be egregious error to maintain that Aponte was not effectively represented by counsel during the competency hearing; it would be equally egregious, given the facts related above, to hold that Aponte was deprived of effective representation during the trial.

Of significance also is the precise repetition of events before this court: the defendant has fired his appellate counsel (in the same manner as he fired his trial counsel), filed his own appellate brief and wishes to proceed *pro se*. Accordingly, this court is placed in the same untenable position as the trial court. It is not beyond the realm of possibility that by refusing to give full effect to Aponte's desire to proceed *pro se* and to ignore the brief submitted by appellate counsel (thus relying solely upon Aponte's brief), this court is itself faced with its own *Faretta* problem with all of its underlying ramifications.

For the reasons stated, I would affirm the judgment below.