UNITED STATES of America,
Plaintiff-Appellee,

v.

James R. HARRIS, Defendant-Appellant.

No. 80–1768.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1981.

Decided Aug. 6, 1982.

Donald W. MacPherson, Phoenix, Ariz., argued, for defendant-appellant; David L. Channell, Barrett & Channell, Long Beach, Cal., on brief.

Paul Rochmes, Asst. U. S. Atty., Los Angeles, Cal., argued, for plaintiff-appellee; Andrea Sheridan Ordin, U. S. Atty., Los Angeles, Cal., on brief.

Before HUG, TANG and FARRIS, Circuit Judges.

HUG, Circuit Judge:

Dr. James R. Harris was indicted under 26 U.S.C. § 7203 for failure to file income tax returns for 1975, 1976 and 1977. At trial, he represented himself and was convicted by a jury on all three counts. Harris contends that he did not knowingly and competently waive his right to counsel, and that he was deprived of the effective assistance of counsel. Because the record does not disclose that the waiver of counsel was knowingly and competently made, we reverse and remand for a new trial.

## FACTS

Dr. Harris, a radiologist, was charged in a three-count indictment with failure to file federal income tax returns for 1975, 1976 and 1977, in violation of 26 U.S.C. § 7203. Harris was initially arraigned before a magistrate. The magistrate informed Harris that he was entitled to counsel and Harris acknowledged that he understood that he had a right to counsel, but chose to represent himself. The magistrate did not question Harris as to whether he understood the nature of the charges and the penalties involved, or the dangers and disadvantages of self-representation. The magistrate did appoint advisory counsel to assist Harris.

Harris then appeared at a second arraignment before the district judge with advisory counsel. In that proceeding, Harris again stated that he wished to represent himself. The district judge did not question Harris, except to verify his true name and as to how he pled to each count.

On September 30, the day set for trial, Harris appeared; the record does not indicate that his advisory counsel was present at that time. There was no question asked at that time relative to his understanding of his right to counsel, or whether he understood the charges, the penalties, or the dangers of self-representation. The court proceeded with the selection of the jury and, upon selection, continued the trial until October 2. On that date, Harris appeared without advisory counsel and the Government attorney stated:

Just to keep the record straight, Michael Levine, who originally had been appointed as advisory counsel for the defendant, advised me yesterday by telephone that the defendant had told him that he did not want Mr. Levine's services. He was appearing completely pro per. That is why Mr. Levine is not here.

The record does not reflect that the court verified that with Harris, or questioned him at that time concerning his understanding of his right to counsel, nor whether he understood the nature of the charges, the penalties involved, or the dangers of self-representation.

The trial proceeded and was concluded that same day, with a verdict of guilty on all counts. Harris was sentenced to one year on each count, and was to serve 50 days in jail on consecutive weekends, the balance being suspended with five years' probation. As a condition of probation, Harris is required to devote three days per week to a medical facility for indigent persons.

The record does not reflect the extent to which Harris conferred with appointed advisory counsel, if at all. Advisory counsel was not present during the trial; it is not clear from the record whether he was present during the selection of the jury or at any earlier pretrial proceedings, except the second arraignment.

Prior to trial, Harris filed various pretrial motions, including a motion for continuance and a request for a bill of particulars, which were denied. During the selection of the jury, he made no peremptory challenges or challenges for cause. He filed a motion to dismiss for lack of jurisdiction. During trial, he did not cross-examine any witnesses, he presented none of his own, and he made no objections to evidence. He sought to

read an opening statement, which was largely an objection to the law and the pretrial proceedings. The court indicated the statement was inappropriate and explained the purpose of an opening statement and told Harris the statement would be filed, but could not be read to the jury. He informed Harris he could tell the jury what he planned to prove; Harris declined to do so. Harris made a motion for judgment of acquittal, which was denied, and a brief closing argument.

A motion for new trial was made at the time of sentencing, at which time he was represented by his current counsel. The basis for the motion was inadequate counsel and inadequate waiver of counsel. The motion was denied.

## DISCUSSION

██ The defendant in a criminal action has a constitutional right to be represented by counsel, and also a right to represent himself, if he so chooses. *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975). The choice that he makes must be made knowingly and intelligently. Before waiving his right to counsel, the defendant must be aware of the nature of the charges and the possible penalties, as well as the dangers and disadvantages of self-representation in a complex area where experience and professional training are most helpful. *United States v. Crowhurst*, 596 F.2d 389, 390 (9th Cir. 1979), *cert. denied*, 449 U.S. 1021, 101 S.Ct. 587, 66 L.Ed.2d 482 (1980); *United States v. Gillings*, 568 F.2d 1307, 1308–09 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978).

██ This court, in *United States v. Dujanovic*, 486 F.2d 182, 188 (9th Cir. 1973), indicated that a district court should not grant a defendant's request to waive representation of counsel and serve as his own counsel, without discussing with the defendant, in open court, whether the waiver was knowingly and intelligently made, with an understanding of the charges, the possible penalties, and the dangers of self-representation. This is clearly the preferable procedure and should be followed by district courts in every case.

This court has, however, held that a failure to do so will not, in every case, necessitate reversal. In *Cooley v. United States*, 501 F.2d 1249, 1252 (9th Cir. 1974), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975), we held that the omission of the colloquy between the defendant and the court was not per se reversible error, when the record reveals a knowing and intelligent waiver. That case involved an unusual fact situation in which the background and experience of the defendant in legal matters was apparent from the record. Later cases emphasized that this was a limited exception, to be applied in rare cases.

We noted in one later case, *United States v. Aponte*, 591 F.2d 1247, 1249 (9th Cir. 1978), that there is a narrow path to be carefully treaded between the *Faretta* right to refuse the assistance of counsel, and the assurance that the defendant's refusal of such services is made with full awareness of the risks of doing so. We stated:

> *Faretta* teaches that a court cannot force counsel upon a competent defendant who elects, after being fully informed, to represent himself. *Dujanovic* teaches that the election must be tested before trial and that the record must show the basis for the court's finding that the right to counsel has been competently and intelligently waived.
>
> Although a trial judge's failure to make a specific waiver inquiry is not *per se* reversible error, the only practical means available to protect against either a *Faretta* reversal or a *Dujanovic* reversal is to make a record before allowing the case to proceed. It will be only the rare case, such as *Cooley*, in which an adequate waiver will be found on the record in the absence of a specific inquiry by the trial judge.

*Aponte*, 491 F.2d at 1250. In a subsequent case, *United States v. Crowhurst*, 596 F.2d 389, 390–91, we reaffirmed the importance of the discussion of the district court, personally with the defendant, to assure a knowing and intelligent waiver, and stressed the rarity of the *Cooley* exception.

In the case at hand, the magistrate did inform Harris of his right to counsel and appointed advisory counsel to assist him. However, there was no discussion to assure that Harris understood the charges or the penalties, or was fully aware of the risks of acting as his own attorney. Perhaps the magistrate assumed that the advisory attorney would inform him on these matters. The record does not reflect whether Harris, in fact, ever discussed the case with the advisory attorney. All indications are that there was very limited contact with the advisory attorney because he apparently was present only at the subsequent arraignment before the district judge, and at no time thereafter.

At the subsequent appearances before the district judge, there was no discussion of his right to counsel, the nature of the charges, the possible penalties, or the risks of self-representation. Perhaps the reason was because the district judge assumed that this discussion had taken place before the magistrate.

Therefore, we look to the record to determine if there is any justification for a finding of a knowing and intelligent waiver, as found in *Cooley*. The Government argues that Harris, being a physician, is obviously an intelligent and informed man, and that his pretrial motion contained a quotation from the charging statute, which indicates he must have been familiar with the charges and the penalties. The difficulty with this argument is that the record does not show whether Harris prepared the motion himself or understood the import of the statute. In fact, his motion seems to reveal a lack of understanding, in that he asserts nonexistent jurisdictional defects and constitutional defects in the wording of the statute. An intelligent professional man may well be competent in his field and yet have no understanding of the law or legal procedures. The importance of determining that the defendant fully understands the risks involved in his waiver of

counsel is no less important in this instance. Even if Harris were arguably aware of the nature of the charges and the penalties, the record nowhere reflects that he was made aware of the dangers of proceeding as his own attorney.

There is the additional factor that an advisory attorney was appointed to assist Harris. It is possible that the advisory attorney fully informed him on these matters.[1] However, nothing in the record so indicates.

Recently, in *United States v. Kimmel*, 672 F.2d 720, 722 (9th Cir. 1982), we noted that the appropriate inquiry is what the defendant understood—not what the court said or what the court understood. In that case, we found the record was insufficient to make the determination and used the procedure of a limited remand to supplement the record. The opinion related the facts in that case, as follows:

> The district court did not explain on the record the risks of self-representation to Kimmel. In the absence of a specific waiver inquiry, we must consult "the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." The record reveals that Kimmel was well-educated and literate. He also had been prosecuted several times before and, in at least one case, had represented himself without the assistance of an attorney. While this background information suggests that Kimmel appreciated the risks of self-representation, we need more details to conclude that he sufficiently understood them. For example, it would be helpful to know whether Kimmel was informed about the risks of self-representation when he represented himself previously. The existing record does not supply these details or other evidence that adequately supports a finding of an intelligent waiver.

*Kimmel*, 672 F.2d at 722 (citation omitted). In *Kimmel*, the existence of other court

1. In *United States v. Gillings*, 568 F.2d 1307, 1309, (9th Cir. 1978), we found that a discussion with the judge and consultation in court with an advisory attorney adequately supported a conclusion that Mr. Gillings had

knowingly and intelligently waived his right to counsel. In this case, there was no discussion with the judge concerning the waiver and no indication that Harris consulted the attorney concerning the waiver.

records could have revealed that the defendant understood the risks of self-representation. Indeed, in that case, the defendant had experience with self-representation. This could conceivably justify an application of the *Cooley* exception.

In this case, we have no such facts and there is no prospect of finding other records of proceedings that could appropriately be used to supplement the record. An after-the-fact inquiry of Harris as to what he knew or understood, or an inquiry as to what he was advised by his counsel, would raise serious constitutional problems and would reverse the very procedure that should be followed. Thus, a limited remand is not appropriate in this case, and we therefore reverse and remand for a new trial.

We do not reach the remaining issues raised by Harris concerning the validity of the terms of probation, in light of the reversal of the conviction.

REVERSED and REMANDED.