RICHIE HICKEY, aka PATRICK JAMES HICKEY, aka RICHARD LEE HABERSTROH, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 21965

February 4, 1993                     846 P.2d 289

[Rehearing denied April 13, 1993]

*Nathaniel J. Reed* and *Norman J. Reed,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, and *Thomas L. Leen,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Richie Hickey, more commonly known by the alias of Richard Haberstroh, was convicted of first-degree murder, kidnapping, sexual assault, and robbery, each with the use of a deadly weapon, and sentenced to death. We affirmed Haberstroh's sentence on direct appeal. Haberstroh v. State, 105 Nev. 739, 782 P.2d 1343 (1989). Haberstroh then sought post-conviction relief, claiming that he was denied the effective assistance of counsel, and that his waiver of the right to counsel under the Sixth Amendment of the United States Constitution was not

voluntary and intelligent. The district court, after a hearing on the matter, denied relief. This appeal followed.

## Background

Haberstroh, represented by public defender George Franzen, pleaded not guilty to charges of first-degree murder with the use of a deadly weapon, kidnapping with the use of a deadly weapon, sexual assault with the use of a deadly weapon, and robbery with the use of a deadly weapon. Trial was scheduled for January 19, 1987. On Haberstroh's motion, the court reset the trial for March 2, 1987.

The week before trial, Haberstroh moved to dismiss his appointed counsel and proceed with his own defense. The district court canvassed Haberstroh extensively to determine if he understood the charges against him, the elements of each crime that the State had to prove, and the possible penalties. The court further questioned Haberstroh about his education and prior legal experience, and advised him that he would not receive any special indulgence by proceeding pro se. The court also reminded Haberstroh that his appointed counsel was an experienced criminal trial lawyer, and questioned Haberstroh about his reasons for wanting to dismiss Franzen. Despite the court's admonitions, Haberstroh insisted that he be allowed to represent himself. The court granted Haberstroh's motion to dismiss counsel, but ordered Franzen to remain to assist Haberstroh as standby counsel.

Four days before trial, Haberstroh moved to continue the trial again. The court denied the motion, and strongly advised Haberstroh not to undertake his own defense. The trial commenced on schedule, with Haberstroh representing himself. A few days into the trial, the court again recommended that Haberstroh reconsider defending himself. At the conclusion of the trial, the jurors voted eleven to one for conviction, resulting in a mistrial. A new trial date was set for September 21, 1987.

On June 4, 1987, the district court asked Haberstroh whom he would like to represent him at his second trial. Haberstroh indicated that he wished to continue representing himself. The district court acknowledged Haberstroh's request, but did not re-admonish Haberstroh about self-representation.

On September 15, 1987, just six days before trial, Haberstroh moved to continue the trial and to have Franzen reappointed as defense counsel. The court indicated that it would gladly appoint Franzen as defense counsel and would be willing to grant a one-week continuance. Franzen indicated that he needed at least a month to prepare. When the court refused to continue the trial for longer than one week, Haberstroh, after an off-the-record conversation with Franzen, stated that he was prepared to proceed himself. Franzen was again appointed as standby counsel.

Haberstroh's second jury trial resulted in guilty verdicts on all counts. At Haberstroh's request, Franzen was reappointed as counsel for the penalty phase of the trial. Haberstroh requested that no witnesses be called on his behalf during the penalty phase, because he did not want his friends and family embarrassed by the publicity the trial received. Haberstroh stated that he had fully considered this decision and discussed it with his legal counsel. The jury found five aggravating circumstances relating to the murder and returned a sentence of death.

## Discussion

### 1. Validity of Haberstroh's waiver of the right to counsel.

Haberstroh first contends on appeal that his decision to proceed pro se in his second trial was not made after a voluntary and intelligent waiver of his right to counsel. Haberstroh concedes that the district court's thorough probe of his intent to represent himself before the first trial resulted in a valid waiver of his right to counsel. However, Haberstroh insists that the court's mere inquiry concerning his counsel of choice for the second trial was inadequate to ensure that his second waiver of the right to counsel was voluntary and intelligent. We disagree.

A criminal defendant has the right to waive the assistance of counsel and represent himself. Faretta v. California, 422 U.S. 806 (1975); Wheby v. Warden, 95 Nev. 567, 598 P.2d 1152 (1979), overruled on other grounds, Keys v. State, 104 Nev. 736, 766 P.2d 270 (1988). The decision to assume one's own defense necessarily involves a waiver of the right to the assistance of counsel. United States v. Dujanovic, 486 F.2d 182, 185 (9th Cir. 1973). Therefore, before permitting a defendant to proceed pro se, a court must take precautions to ensure that the defendant understands the charges against him as well as the dangers and disadvantages of self-representation. Anderson v. State, 98 Nev. 539, 654 P.2d 1026 (1982). A determination of the validity of a waiver of the right to counsel involves a fact-specific inquiry focused on the background, experience and conduct of the accused. Wayne v. State, 100 Nev. 582, 584, 691 P.2d 414, 415 (1984) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1937)).

In Wayne, this court rejected the contention that the failure of the trial court to canvass a defendant who chose to represent himself was reversible error. The evidence indicated that Wayne had thrice represented himself and obtained acquittals, and was aware of the dangers of proceeding pro se. The omission of a Faretta canvass is not reversible error where "it appears from the whole record that the defendant knew his rights and insisted upon

representing himself." Cooley v. United States, 501 F.2d 1249, 1252 (9th Cir. 1974), *cert. denied,* 419 U.S. 1123 (1975), *quoted in Wayne,* 100 Nev. at 585, 691 P.2d at 416.

In the instant case, Haberstroh had been thoroughly canvassed about the dangers of self-representation and had performed as his own attorney in the first trial, which lasted several weeks. The district court noted that Haberstroh handled his case in a reasonably competent manner, including thoroughly cross-examining adverse witnesses and presenting witnesses on his behalf. Haberstroh appeared to be quite intelligent and under control during the trial, and completely familiar with the evidence against him. In addition, Haberstroh told the court that he had completed high school and two years of college, said that he had previously represented himself during a jury trial for robbery in a New Jersey court, and indicated that he had researched and written his own motion to dismiss counsel and proceed pro se.[1] The district court found Haberstroh to be intelligent and capable of carrying on his own defense. Franzen also indicated that Haberstroh was one of the most intelligent persons he had ever represented.

Despite the substantial evidence in the record indicating that Haberstroh insisted on representing himself while fully aware of his rights and the dangers of self-representation, Haberstroh urges that a *Faretta* canvass must be mechanically performed each time a defendant expresses a desire to represent himself. We reject Haberstroh's position as a distortion of the spirit of *Faretta,* which was given birth to ensure that a waiver of the right to counsel is knowingly and intelligently made. *Wayne,* 100 Nev. at 585, 691 P.2d at 416. The decision as to whether a defendant has made such a waiver must be evaluated on an individual basis. Haberstroh represented himself as an intelligent, competent and experienced defendant. Under the circumstances, Haberstroh has failed to show that his right to counsel was not knowingly and intelligently waived before the second trial.

Haberstroh also claims that his waiver of the right to counsel was not voluntary and intelligent because the district court refused to grant a lengthy continuance for Franzen to assume the defense.

We determine that the district court acted well within its discretion in denying the request for a protracted continuance. Franzen, as standby counsel, had been instructed to be prepared

---

[1]At the evidentiary hearing below, Haberstroh changed his story and claimed that he had never been to a jury trial and had not prepared his own motion.

to take over the defense at any time, if the need arose. Moreover, shortly before the first trial, Franzen indicated that he was prepared to proceed prior to being dismissed as defense counsel. Franzen was present during the entire first trial and the evidence presented at the second trial was virtually identical to that of the first. Therefore, Franzen should not have required a lengthy continuance to prepare to assume Haberstroh's defense.[2]

At the evidentiary hearing below, Franzen testified that after the district court had refused to grant a one-month continuance, Haberstroh thanked Franzen for requesting the continuance and expressed pleasure with the court's denial because he had created the record that he wanted and could then proceed with his own representation. The district court determined, and the record suggests, that Haberstroh's request for the appointment of Franzen on the eve of trial, conditioned on a continuance, was an intentional effort to manipulate the court system and inject error into the record. We conclude that the district court's refusal to grant the requested continuance did not invalidate Haberstroh's waiver of the right to counsel.

### 2. *Effective assistance of counsel.*

Although Haberstroh represented himself during the guilt phase of his trial, he alleges that he received ineffective assistance of counsel at three stages of the proceedings against him. To support a claim of ineffective assistance of counsel, Haberstroh must establish two elements: first, that his counsel's representation was substandard, and second, that Haberstroh was prejudiced by his counsel's errors. Strickland v. Washington, 466 U.S. 668 (1984); Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984), *cert. denied,* 471 U.S. 1004 (1985).

Haberstroh first contends that Franzen did not provide effective assistance as standby counsel during the trials. However, the district court determined that Franzen effectively performed his duties as standby counsel and conferred with Haberstroh several times throughout both trials. Haberstroh's assertion to the contrary is unsupported by the record. We therefore reject this claim.

Second, Haberstroh asserts that Franzen was ineffective when he represented Haberstroh during the penalty phase of the trial

---

[2]Additionally, the court, which had rearranged its calendar to accommodate the trial, and many out-of-state witnesses would have been affected by a continuance.

because Franzen failed to present any mitigating evidence on Haberstroh's behalf. Defense counsel has a duty to reasonably investigate possible mitigating evidence. *Strickland,* 466 U.S. at 691. However, the record shows that Haberstroh instructed Franzen not to present any witnesses. In addition, Haberstroh has failed to allege any mitigating evidence or witnesses which could have been introduced on his behalf. The instant situation bears no resemblance to Wilson v. State, 105 Nev. 110, 771 P.2d 583 (1989), in which this court vacated the death sentence of John Olausen because his attorney chose not to present a large body of available mitigating evidence under the preposterous conclusion that he thought it would be a waste of time and would anger the judge. By failing to indicate what, if any, mitigating evidence could have been produced by Franzen, Haberstroh has, at a minimum, failed to prove that he suffered any prejudice by Franzen's representation at the penalty hearing.

Finally, Haberstroh argues that his appellate counsel, from the public defender's office, was ineffective for failing to raise the issue of the validity of Haberstroh's waiver of counsel on direct appeal. Clearly, Haberstroh's contention is without merit since we have determined that his waiver of the right to counsel was valid. This issue fails as a basis for determining prejudice from the efforts of appellate counsel.

For the reasons specified above, we conclude that Haberstroh knowingly and intelligently waived his right to counsel and that he was not deprived of the effective assistance of counsel. We therefore affirm the decision of the district court denying post-conviction relief.