An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

ANTHONY TERRELL WILLIAMS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 59741

**FILED**

SEP 2 6 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

*ORDER OF REVERSAL AND REMAND*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of robbery with the use of a deadly weapon of a person 60 years of age or older and burglary while in possession of a firearm. Eighth Judicial District Court, Clark County; Doug Smith, Judge.

Appellant Anthony Williams entered a mail and copy store, held the owner at gunpoint, and demanded that the owner give him all of the money from the cash register. Once the owner complied, Williams fled the store. Williams was eventually apprehended and charged with robbery with the use of a deadly weapon of a person 60 years of age or older and burglary while in possession of a firearm.

Before trial, Williams requested to represent himself because he did not believe that the public defender's office could sufficiently represent him. The district court conducted what it believed was an appropriate *Faretta* canvass and determined that Williams was competent to represent himself. Before trial, the district court reappointed the public defender's office to assist Williams in his defense. However, that attorney later withdrew because of disagreements with Williams. The district court believed that it did not need to conduct another *Faretta* canvass and again allowed Williams to represent himself. At trial, Williams conducted voir

SUPREME COURT
OF
NEVADA

(O) 1947A

13-28796

dire and gave his opening statement. After opening statements, Williams requested that his standby counsel be appointed as lead counsel. The district court denied Williams's request because standby counsel requested that the court grant a one-day recess and the district court did not want to delay the proceedings. Williams conducted the remainder of the trial and was subsequently convicted of both counts. This appeal followed, in which Williams asks this court to review whether the district court erred in failing to conduct a proper *Faretta* canvass before allowing Williams to represent himself.

*The Faretta canvass was insufficient*

Williams contends that he was denied his constitutional right to counsel because the district court's *Faretta* canvass was inadequate. Specifically, Williams states that he was unaware of the potential sentence and did not know that he would lack a potential claim of ineffective assistance of counsel in future habeas corpus proceedings. Further, Williams contends that the district court acknowledged that he was incompetent to represent himself but still allowed him to do so. In contrast, the State contends that the canvass was sufficient, based on the questions asked by the district court and by reference to the record as a whole.

"We give deference to the district court's decision to allow the defendant to waive his right to counsel." *Hooks v. State*, 124 Nev. 48, 55, 176 P.3d 1081, 1085 (2008). However, "harmless-error analysis does not apply to an invalid waiver of the right to counsel," and if we determine that the canvass was insufficient, "we must reverse [the defendant's] judgment of conviction and remand for a new trial." *Id.* at 57-58, 176 P.3d at 1086-87.

In *Faretta v. California*, the United States Supreme Court mandated that a defendant opting to represent himself or herself must "knowingly and intelligently forgo those relinquished benefits." 422 U.S. 806, 835 (1975) (internal quotations omitted) (referring to the "traditional benefits associated with the right to counsel"). But it is not necessary that the defendant have the skill or experience of an attorney; he or she must simply "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

*Hooks* relies on *Faretta* as a basis for its analysis. 124 Nev. at 53-54, 176 P.3d at 1084. In *Hooks*, the district court stated that a defendant's waiver must be knowing, intelligent, and voluntary. *Id.* at 54, 176 P.3d at 1084. The district court went on to state that a defendant's waiver must be reviewed under each case's particular facts and circumstances, "including the defendant's background, experience, and conduct." *Id.* In order to ensure that the defendant's waiver was appropriate, the court reaffirmed its prior decision in *Wayne v. State*, 100 Nev. 582, 691 P.2d 414 (1984), which "'urged [trial courts] to canvass defendants.'" *Hooks*, 124 Nev. at 54, 176 P.3d at 1084 (alteration in original) (quoting *Wayne*, 100 Nev. at 585, 691 P.2d at 416). It also urged district courts to make specific "findings as to whether the defendant's waiver of the right to counsel is knowing, intelligent, and voluntary." *Id.* at 55-56, 176 P.3d at 1085.

*Hooks* also relies on SCR 253, which provides additional guidance to district courts when conducting a *Faretta* canvass. *Id.* at 54, 176 P.3d at 1084-85. SCR 253(1) is clear in its requirements that

> the [district] court should make a specific, penetrating and comprehensive inquiry of the defendant to determine whether the defendant understands the consequences of his or her decision to proceed without counsel. The district court's observation of the defendant should reveal that the defendant appears to understand the nature of the proceedings, and is voluntarily exercising his or her informed free will. The district court's inquiry should reveal whether the defendant should consult with appointed counsel to discuss the consequences of self representation before deciding to proceed in proper person.

In fact, SCR 253(4) requires that a district court make specific findings on the record as to whether: "(a) The defendant is competent to waive his or her constitutional right to be represented by an attorney; and (b) The defendant is waiving the right to counsel freely, voluntarily and knowingly, and has a full appreciation and understanding of the waiver and its consequences." To guide the district courts, SCR 253 includes certain "dangers, disadvantages and consequences of self representation," of which the district courts should inform the defendant, SCR 253(2), and a list of areas that district courts are advised to cover when canvassing the defendant. SCR 253(3).

Finally, *Hooks* provides that a "'mechanical performance of a *Faretta* canvass,'" or a canvass "addressing specific matters 'that go beyond the general requirements of *Faretta*,'" is not required as long as it is clear from the record that the defendant was aware of the risks of representing himself. 124 Nev. at 55, 176 P.3d at 1085 (quoting *Graves v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

4

*State*, 112 Nev. 118, 125, 912 P.2d 234, 238 (1996)). The inquiry, however, is "not whether he was able to competently and intelligently represent himself." *Graves*, 112 Nev. at 124, 912 P.2d at 238 (internal quotations omitted). Further, even a complete lack of a *Faretta* canvass does not mandate reversal if it is clear from the record that the defendant was aware of his rights and still wished to represent himself. *Hooks*, 124 Nev. at 55, 176 P.3d at 1085 (citing *Graves*, 112 Nev. at 125, 912 P.2d at 238).

In this case, the district court's first question to Williams was if he knew the range of punishment for the two crimes charged. Williams gave the incorrect answer. The district court, rather than correcting him, went on to ask Williams if he knew how to subpoena witnesses. The conversation then devolved into an argument between the district court and Williams regarding the public defender's office and the quality of representation. Williams believed that he had no choice but to represent himself because the public defender's office would not let him put on certain witnesses and he felt that he was excluded from an unrelated trial. During the less-than-ten-minute colloquy, the district court asked Williams how many felony convictions he had, whether he knew what witnesses would be relevant, how many years of school he had completed, and whether he knew his duty if the district court sustained an objection. The district court also warned Williams that he was facing a much longer sentence than two to five years, that Williams would not be able to withdraw his *Faretta* waiver, and that it was a bad decision for Williams to choose to represent himself. Williams stated that he understood but felt that he had no choice but to represent himself.

The most telling exchange between Williams and the district court came at the end of the hearing:

> [District court]: . . . [Y]ou don't know what the sentence is, you don't know how to subpoena witnesses, you don't know how to give notice. Your motions may not be relevant and yet you want to represent yourself. You didn't even realize you're looking at the habitual criminal statute. I asked you and you didn't have – you don't have any clue, but you can deal with it because you're the tough guy.

> [Williams]: No, I'm just innocent.

> [District court]: Big mistake on your part, big mistake. You're going to represent yourself, figure out how to file your motions.

The canvass was anything but "specific, penetrating [or] comprehensive." SCR 253(1). Perhaps Williams knew and understood that he had a right to appointed counsel, but he did not appreciate the nature and severity of the crimes charged and the nature of the upcoming proceedings. In reviewing the topics and questions that the district court should ask a defendant, the district court did not: (1) clearly state that Williams would be required to comply with all the same rules that lawyers are required to comply with, (2) warn Williams that he would not have a claim of ineffective assistance of counsel on appeal, (3) inform Williams that he would not be given special library privileges, (4) warn Williams that the prosecution would likely have an advantage because he did not understand all of his rights or defenses, and (5) inform Williams that his defense may be "diminished by [his] dual role as attorney and accused." SCR 253(2). Further, of the topics that a district court may cover with a defendant under SCR 253(3), the district court only asked Williams about

the level of his education and his understanding of the possible penalties if found guilty. Finally, the district court did not make specific findings on the record as required by SCR 253(4). The circumstances under which the canvass was conducted do not clearly show that Williams knowingly and intelligently waived his right to counsel. *Hooks*, 124 Nev. at 54, 176 P.3d at 1084.

Although we conclude that the canvass itself was insufficient, we must also look to the record as a whole to determine if it shows that the waiver was appropriately granted. *Id.* at 55, 176 P.3d at 1085. The State contends that by looking to the record as a whole, it is evident that, even if the canvass was improper, Williams still knowingly, intelligently, and voluntarily waived his right to counsel. During the pendency of the proceedings, Williams had two attorneys and dismissed both of them. If Williams's second appointed counsel had remained throughout the trial, any error with respect to the *Faretta* canvass would have been cured. But because another *Faretta* canvass was not conducted after the withdrawal of Williams's second attorney and the district court relied on the original improper *Faretta* canvass, the district court's error remained.

Furthermore, because every reasonable presumption against waiver should be made, *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004), and the "defendant's courtroom performance [cannot be used] in deciding whether the defendant was competent to waive his right to counsel," *United States v. Aponte*, 591 F.2d 1247, 1250 (9th Cir. 1978), the district court's canvass and the record as a whole do not show that Williams's waiver was knowing, intelligent, and voluntary. Because harmless-error analysis does not apply, reversal and a new trial are

necessary. *Hooks*, 124 Nev. at 57-58, 176 P.3d at 1086-87. Accordingly, for the foregoing reasons we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for a new trial and further proceedings consistent with this order.[1]

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

cc:   Hon. Doug Smith, District Judge
      Sandra L. Stewart
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk

---

[1]Williams raises several other issues on appeal. In light of our decision to reverse the judgment of conviction, we need not reach these issues.