137 Nev., Advance Opinion 78

## IN THE SUPREME COURT OF THE STATE OF NEVADA

CHRISTIAN STEPHON MILES,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79554



FILED

DEC 23 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of sex trafficking of a child under 18 years of age, first-degree kidnapping, living from the earnings of a prostitute, and child abuse, neglect, or endangerment. Eighth Judicial District Court, Clark County; Mary Kay Holthus, Judge, and James Bixler, Senior Judge.

*Reversed and remanded.*

Mario D. Valencia, Henderson,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and John Niman, Deputy District Attorney, Clark County, for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

## OPINION

By the Court, STIGLICH, J.:

This case concerns the warnings a trial court must give to a criminal defendant who has expressed a desire to exercise his right, under

21-36607

*Faretta v. California*, 422 U.S. 806 (1975), to waive the right to counsel and represent oneself. In this opinion, we emphasize that a *Faretta* canvass must ensure that a defendant decides whether to waive counsel with eyes open. The canvass must safeguard against the unacceptable danger that defendants would choose to represent themselves with an incomplete understanding of the risks they face. Inadequate warnings harm not only the defendant, but also the credibility of our justice system.

We hold today that a trial court should not ignore a defendant's lack of understanding about the charges and potential sentences that becomes evident during the canvass. While no specific questions are required, the trial court should not disregard a defendant's evident lack of understanding. Here, because the trial court's canvass did not ensure that the defendant understood the aggregate mandatory minimum sentence he potentially faced or the risks and disadvantages of waiving the right to counsel, we reverse and remand. We further observe that the trial court inappropriately disparaged the defendant's choice to waive counsel during the canvass. While it is important that the trial court ensure that a defendant understands the risks of deciding to waive counsel, the court must conduct its canvass in a courteous manner, consistent with the respect due to the defendant's exercise of a constitutional right and the decorum and impartiality demanded by the judicial process.

## FACTS AND PROCEDURAL HISTORY

Appellant Christian Stephon Miles was charged with sex trafficking of a child under 18 years of age, first-degree kidnapping, living from the earnings of a prostitute, and child abuse, neglect, or endangerment. The victim, who was 16 years old at the time of the crimes, testified that Miles contacted her to entice her to engage in prostitution, helped her to run away from home and to remove an ankle bracelet she was

required to wear in connection with a previous prostitution arrest, and advertised her sexual services on Craigslist.

Well before trial, Miles became dissatisfied with the attorney assigned to him, and he moved for permission to represent himself. The trial court immediately began to discourage Miles from doing so, calling self-representation "the stupidest thing in the world," "a bonehead move," and "a nail in your coffin." But Miles was insistent, and the court engaged in a *Faretta* canvass, stating that "I'll try and make it quick."[1]

The court explained to Miles that an attorney trains in the law and has the skills and experience to properly defend a case; Miles acknowledged that his legal training was limited to reading litigation manuals "and trial books." The court probed Miles' understanding of his Fifth Amendment right not to testify and the consequences of waiving that right. The court explained in particular that the State might be able to introduce Miles' prior conviction for pandering to impeach him as a witness, and Miles said he understood. The court also asked Miles to explain the difference between peremptory and for-cause challenges to jurors. Miles' responses to these questions indicated a generally accurate, if rough, understanding of trial procedure.

The court also asked Miles to state the elements of sex trafficking. Miles answered: "Recruiting—recruiting, enticing a person to commit sex trafficking, conspiracy; it's a whole bunch, Your Honor. I don't know off the top of my head, but there's a whole bunch of elements, Your Honor." The court did not inquire further as to Miles' understanding of the

---

[1]Eighth Judicial District Court Senior Judge James Bixler conducted the canvass in question.

SUPREME COURT
OF
NEVADA

(O) 1947A

substantive law underlying sex trafficking and did not ask Miles whether he understood the elements of the other charges.

The court also asked Miles to state the range of punishment for the crimes he was charged with. Miles replied:

> THE DEFENDANT: Five to life, life.
>
> THE COURT: Life. You could be—if you're convicted on first-degree kidnapping in Count 2, you could be sentenced to life. Do you understand that?
>
> [THE PROSECUTOR]: And Your Honor, Count 1 is non-probationable, and he does have to register as a sex offender if he's convicted.
>
> THE COURT: You understand all that?
>
> THE DEFENDANT: Whereas sex trafficking is registered—you have to register—
>
> [THE PROSECUTOR]: And non-probationable.
>
> THE DEFENDANT: —I'm aware of that.
>
> THE COURT: You're going to prison. You get convicted, you're going to prison.
>
> THE DEFENDANT: I'm aware of that.

No other discussion of the potential sentence occurred during the *Faretta* canvass. At the conclusion of the canvass, the court observed, "You've already answered the rest of these questions. You've already explained why you want to represent yourself and why you think you can do a better job; and I tried to talk you out of it . . . ." The court reluctantly granted Miles' motion.

Miles represented himself at trial. A jury found him guilty of all charges. The court sentenced him to 5 years to life on the sex trafficking charge, 5 years to life on the kidnapping charge, 19 to 48 months on the living-off-the-earnings charge, and 24 to 72 months on the child abuse charge. The court ordered the minimum sentences for each charge to run

SUPREME COURT
OF
NEVADA

(O) 1947A

consecutively, for a total of 163 months to life. Miles appealed, and the court of appeals affirmed the judgment of conviction. *Miles v. State*, No. 79554-COA, 2021 WL 398992 (Nev. Ct. App. Jan. 29, 2021) (Amended Order of Affirmance and Order Denying Rehearing). We granted Miles' subsequent petition for review under NRAP 40B.

## DISCUSSION

*Background of the* Faretta *right*

A criminal defendant may waive one's right to counsel and represent oneself. *See generally Faretta v. California*, 422 U.S. 806 (1975). The right to represent oneself, and to refuse appointed counsel of the State's choosing, stems from "that respect for the individual which is the lifeblood of the law." *McCoy v. Louisiana*, 584 U.S. ___, ___, 138 S. Ct. 1500, 1507 (2018) (internal quotation marks omitted); *see McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984) (recognizing that the right to represent oneself "exists to affirm the accused's individual dignity and autonomy").

Dissenting from *Faretta*, Justice Blackmun observed that "[i]f there is any truth to the old proverb that 'one who is his own lawyer has a fool for a client,' the Court by its opinion today now bestows a constitutional right on one to make a fool of himself." 422 U.S. at 852. Justice Blackmun was surely correct that a criminal defendant can rarely, if ever, represent oneself as effectively as a trained attorney. Yet the right to represent oneself is firmly embedded in our law as a fundamental aspect of the right to control one's own defense. Accordingly, courts and legislatures have developed various safeguards to ensure that defendants who choose to exercise that right are well-informed enough not to make fools of themselves—even if their choice is, in an objective sense, likely unwise.

The need for at least some safeguards has been recognized from the beginning, when the Supreme Court of the United States wrote that a

defendant who chooses to waive counsel "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835 (quoting *Adams v. United States*, 317 U.S. 269, 279 (1942)). Thus, "an accused who chooses self-representation must satisfy the court that his waiver of the right to counsel is knowing and voluntary." *Vanisi v. State*, 117 Nev. 330, 337-38, 22 P.3d 1164, 1170 (2001). A court does not show respect for individual dignity and autonomy by allowing an individual who has not knowingly and voluntarily waived counsel—or, to put it another way, who has waived counsel with eyes closed—to represent oneself. A conviction obtained after an invalid waiver of the right to counsel—that is, one that fails to demonstrate that the defendant knowingly, intelligently, and voluntarily waived the right—is per se invalid and is not subject to harmless-error analysis. *Hooks v. State*, 124 Nev. 48, 57-58 & n.23, 176 P.3d 1081, 1086-87 & n.23 (2008).

Determining whether a waiver is valid is not a mechanical task. The Supreme Court of the United States has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Likewise, "this court has 'rejected the necessity of a mechanical performance of a *Faretta* canvass.'" *Hooks*, 124 Nev. at 55, 176 P.3d at 1085 (quoting *Graves v. State*, 112 Nev. 118, 125, 912 P.2d 234, 238 (1996)). Despite not requiring any "mechanical performance" of a script, we have nevertheless repeatedly "urge[d] the district courts to conduct a thorough inquiry of a defendant who wishes to represent himself and to make findings as to whether the defendant's waiver of the right to counsel is knowing, intelligent, and voluntary." *Id.* at 55-56, 176 P.3d at 1085 (internal quotation marks omitted); *see Wayne v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

6

*State*, 100 Nev. 582, 585, 691 P.2d 414, 416 (1984). Certain "areas of suggested inquiry are set forth in SCR 253(3), including the defendant's understanding of the charges and the possible penalties." *Hooks*, 124 Nev. at 54, 176 P.3d at 1085; *see* SCR 253(3)(g) (directing that court may inquire into "[d]efendant's understanding of the possible penalties or punishments, and the total possible sentence the defendant could receive"). After the canvass, the district court must make specific findings concerning whether the defendant waives "the right to counsel freely, voluntarily and knowingly, and [with] a full appreciation and understanding of the waiver and its consequences." SCR 253(4)(b).

Ordinarily, "[w]e give deference to the district court's decision to allow the defendant to waive his right to counsel," no matter what specific questions the court asks. *Hooks*, 124 Nev. at 55, 176 P.3d at 1085. Other appellate courts have justified deference to the trial court by acknowledging the tension inherent in the simultaneous guarantees of a right to counsel and a right to represent oneself. *See, e.g.*, *United States v. Ziegler*, 1 F.4th 219, 226 (4th Cir. 2021); *United States v. Garey*, 540 F.3d 1253, 1265-66 (11th Cir. 2008). These appellate courts have been concerned that too searching an inquiry into the trial court's decision will lead to unworkable results. Once the trial court has conducted a canvass, it is put in an awkward position by the convergence of these two rights. The court risks reversal if it *allows* the defendant to self-represent, because the canvass might be found insufficient to show a knowing and voluntary waiver. But on the other hand, it risks reversal if it *refuses* the defendant's request, because the defendant has a right to self-represent and that right is not extinguished by an insufficient canvass over which the defendant has little to no control. This leaves trial courts "with the narrowest of channels along

which to navigate the shoals of possible error." *People v. Bush*, 213 Cal. Rptr. 3d 593, 609 (Ct. App. 2017).

*The canvass must show the defendant generally understood the risk of self-representation*

When a defendant waives counsel and agrees to proceed to trial alone, the defendant is giving up an important and specifically enumerated constitutional right. "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights" like the right to counsel. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal quotation marks omitted); *see United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004). We have previously protected this presumption by requiring that a defendant seeking to waive counsel show that the decision was made "with a clear comprehension of the attendant risks." *Graves*, 112 Nev. at 124, 912 P.2d at 238. The decision must also be made with "a full understanding of the disadvantages." *Id.* Where the defendant does not generally understand the aggregate potential sentence posed by the charges collectively, we conclude that the defendant cannot be said to clearly comprehend the risks of waiving counsel. *See Arrendondo v. Neven*, 763 F.3d 1122, 1131 (9th Cir. 2014) (concluding that defendants must know the range of potential punishments to "understand the magnitude of the loss they face").[2]

Here, Miles acknowledged that he faced a sentence of "[f]ive to life." On this basis, Miles could have reasonably believed that he would be eligible for parole after 5 years. The trial court did not ask Miles whether

---

[2]*But see Bush*, 213 Cal. Rptr. 3d at 605-07 (disagreeing with *Arrendondo* and holding that not even an advisement of the maximum sentence is constitutionally required in every case).

he understood that the minimum sentences could be ordered to run consecutively, nor did it explain that he might not have an opportunity to face the parole board for 12 years. The canvass thus did not show whether Miles understood that the potential aggregate sentence exceeded "[f]ive to life." When a defendant faces a maximum sentence of life in prison, a difference of years in parole eligibility can be dramatic. A sentence of 5 years to life and a sentence of 12 years to life are simply not the same sentence. A defendant who is willing to proceed without counsel when anticipating facing the parole board in a few years may well want a lawyer if it is known there may not be another chance to argue for his freedom for decades. We agree with Miles that this understanding was necessary to a knowing and voluntary waiver of his right to counsel. Accordingly, we cannot conclude that the trial court's determination that Miles validly waived his right to counsel was reasonable in light of the inadequate inquiry into Miles' understanding of the sentences he faced if convicted.

*The trial court should conduct the canvass carefully and address a defendant's lack of understanding, if such affirmatively appears*

We turn now to the trial court's discussion of the elements of the crimes charged. This is a suggested area of inquiry under SCR 253(3)(f). The trial court was not required to discuss any particular topics under that rule. It did so, however, by asking Miles to state the elements of sex trafficking. Miles' answer—"Recruiting—recruiting, enticing a person to commit sex trafficking, conspiracy; it's a whole bunch, Your Honor—" showed a serious lack of understanding of the charge of sex trafficking. The trial court made no effort to address Miles' lack of understanding, but simply moved on, as if it had checked a box.

To be sure, we are mindful that Miles' "technical legal knowledge, as such, was not relevant to an assessment of his knowing

exercise of the right to defend himself." *Graves*, 112 Nev. at 124, 912 P.2d at 237-38 (quoting *Faretta*, 422 U.S. at 836). A *Faretta* canvass is not a law school exam that the defendant must pass or be denied the right to represent oneself, and Miles' inability to state the elements of sex trafficking—while no doubt injurious to his *ability* to defend himself—did not nullify his *right* to try to defend himself.

But a *Faretta* canvass is also not a list of questions to be asked without consideration of the answers. A canvass is a conversation. When the defendant's responses affirmatively indicate a lack of understanding, the trial court should follow up by pointing out the defendant's error. When the defendant's error involves the elements of the crime, the trial court can inform the defendant that this lack of understanding is one of the disadvantages of representing oneself. The trial court should seek to ensure that the defendant makes the decision with eyes open as to those disadvantages. The defendant will be ill-suited to assess the wisdom of representing oneself if the defendant acts on incorrect information. Faced with the defendant's own mistakes, the defendant may well accept the assistance of counsel. If the defendant still insists upon proceeding pro se, it will have been done with the correct information.

Here, the trial court asked Miles to state the elements of sex trafficking, and Miles did not do so. This should have given the trial court pause. Instead, the trial court changed the subject and moved on without comment. We stress that the trial court was not obligated to delve into the elements of the charged crimes, *cf. Arajakis v. State*, 108 Nev. 976, 980, 843 P.2d 800, 802 (1992) (noting that *Faretta* "does not require the trial court to explain the elements of the charged offense"), but once it did, that inquiry revealed that Miles did not understand the sex trafficking charge and thus

may not have appreciated the disadvantages of self-representation. And the inadequacy of the trial court's canvass appears again in its conclusion. Rather than specifically determining whether Miles understood the rights that he was waiving and the consequences of waiver, as SCR 253(4)(b) requires, the court simply noted that Miles answered the questions posed and indicated that he believed he could do a better job in the face of the court's efforts to dissuade him.

When these errors—i.e., the trial court's failure to address Miles' expressed lack of understanding about the potential sentences and the elements of sex trafficking—are taken together, we are unable to say with any confidence that Miles' waiver of the right to counsel was knowing and voluntary. As an invalid waiver of the right to counsel is not subject to harmless-error analysis, we reverse.[3]

*The trial court should refrain from disparaging the defendant's choice to waive counsel*

Finally, we must note our strong disapproval of the trial court's tone in addressing Miles when he first sought to proceed pro se. The trial court warned Miles that self-representation was "a bonehead move," "the stupidest thing in the world," "so dumb and so stupid," and "a bad decision." The trial court also warned Miles that "[t]he State would love to have you

---

[3]Miles also argues that (1) his sentence is cruel and unusual in violation of the state and federal constitutions; (2) NRS 176.035(1) is unconstitutionally vague in that it gives district judges unfettered discretion to order sentences to be served consecutively or concurrently, and the court of appeals' opinion to the contrary in *Pitmon v. State*, 131 Nev. 123, 352 P.3d 655 (Ct. App. 2015), should be overruled; and (3) the court was required to sua sponte revoke Miles' right to self-representation when he allegedly abused that right. We have considered these arguments and find them without merit.

represent yourself, because they know . . . the only thing you're going to do is screw yourself." The trial judge has a duty to "maintain, especially in a jury trial, that restraint which is essential to the dignity of the court and to the assurance of an atmosphere of impartiality." *United States v. Allen*, 431 F.2d 712, 713 (9th Cir. 1970); *see also Holderer v. Aetna Cas. & Sur. Co.*, 114 Nev. 845, 850, 963 P.2d 459, 463 (1998) (finding judicial misconduct where trial judge trivialized the proceedings with facetious comments); *Parodi v. Washoe Med. Ctr., Inc.*, 111 Nev. 365, 367, 892 P.2d 588, 589 (1995). The Nevada Code of Judicial Conduct specifically requires a judge to "be patient, dignified, and courteous to litigants," and the canvass here should have adhered to this obligation more stringently. NCJC 2.8(B); *cf. In re Disciplinary Proceeding Against Eiler*, 236 P.3d 873, 878-79 (Wash. 2010) (upholding judicial suspension in part based on deriding pro se litigants' intelligence).

Although courts must impress on the defendant the risks of self-representation, the trial court should not disparage the defendant for his exercise of a constitutional right. We urge trial courts to remain objective in discussing the wisdom of a defendant's decision whether to forgo counsel and proceed pro se.

### CONCLUSION

When a criminal defendant desires to waive the right to counsel, the trial court must ensure that decision is made knowingly and voluntarily. The trial court must conduct a careful canvass and ensure that a defendant understands the risks and disadvantages of self-representation. While no specific questions are constitutionally required, a trial court that learns during the canvass that the defendant may not understand the charges or the potential sentences should address that lack of understanding. In this instance, the court should have addressed Miles'

SUPREME COURT
OF
NEVADA

(O) 1947A

12

errors and informed him that the court would not assist him in this regard and that his lack of understanding would put him at a disadvantage in representing himself. Because the trial court did not further address Miles' apparent lack of understanding of the potential aggregate sentence and the elements of sex trafficking, we reverse the judgment of conviction and remand for proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, C.J.
Hardesty

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Silver

_____, J.
Herndon